No. 17,097.

SCONCE *v.* NEECE, ADMINISTRATRIX ET AL.
(268 P. [2d] 1102)

Decided April 5, 1954.

Mr. EARL T. THRASHER, Mr. HENLEY A. CALVERT, for plaintiff in error.

Messrs. HUGHES & DORSEY, Mr. E. G. KNOWLES, Messrs. THURMON, GREGORY & TAYLOR, Mr. CLAYTON D. KNOWLES, Mr. PAUL G. WEST, for defendants in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the court.

The parties to this review are in the positions respectively in which they appeared in the trial court. We will refer to plaintiff in error as plaintiff, and to defendants in error as defendants or by name.

No oral evidence was offered in the trial court, the parties having stipulated as to the facts. The following is a chronological statement of such facts in so far as they are deemed necessary for a determination of the case.

Susan A. Soper, nee Morris, a widow, died in Denver, Colorado, June 4, 1918, leaving a will which had been executed on April 24, 1911. At the time of the execution of the will, Mrs. Soper's only heirs presumptive were her two daughters, Katie S. Pence and Lulu S. Middelton. Both daughters were living at the time of Mrs. Soper's death. Mrs. Soper's will was admitted to probate in the county court in and for the City and County of Denver. The material portions of the will are as follows:

"Second: I give, devise and bequeath all my estate, real personal and mixed, to my daughters, Katie S. Pence, and Lulu S. Middelton, and the heirs of their body, share and share alike, provided that, if either of my said daughters shall not be living at the date of my death, without any children surviving her, then, I give, devise and bequeath all my estate aforesaid to the survivor.

"Third: I nominate and request the Court to appoint my daughters, Katie S. Pence and Lulu S. Middelton, or the survivor of them, in case they be both not living at my death, executrices of my estate, to serve without bond, and direct that my said daughters shall co-operate in the care, management and disposal of my said estate. I hereby give and grant to my said executrices, acting conjointly, if both be living, and if both be not living, then, to the survivor, full power and authority to sell

and convey any of my said property or exchange the same, or to convert it into cash and re-invest the proceeds thereof as they or the survivor thereof, shall deem advisable."

The two daughters were duly appointed executrices and the estate was administered and duly closed. Katie S. Pence, one of the surviving daughters, died in Denver, Colorado, November 6, 1920, and Lulu S. Middelton was decreed to be her sole heir. No children survived Katie S. Pence, and no child ever had been born to her.

Lulu S. Middelton, the second of the two daughters of Susan A. Soper, died in Denver, Colorado, January 20, 1951, leaving a will. This will was admitted to probate on or about April 9, 1951. The estate of Lulu S. Middelton consisted almost entirely of real and personal property owned by Susan A. Soper at the time of her death. No children survived Lulu S. Middelton and no child ever had been born to her.

Shortly after the death of Lulu S. Middelton, Ben Sconce, the present plaintiff, commenced the action now before our Court for review. Named as defendants in this action were: (1) Hugh Neece as Executor of the Estate of Lulu S. Middelton, Deceased, and as a devisee and legatee; (2) Florence Neece, Clara Rogers, Virginia Allen and The Adult Blind Home Association as devisees and legatees; (3) Colorado National Bank as contingent trustee; (4) Thomas R. Morris as an heir of Susan A. Soper, who refused to join as a party plaintiff; (5) John Morris, Will Morris and Dan Morris, their heirs and descendants and all unknown persons claiming by, through or under them, as heirs of Susan A. Soper, but whose whereabouts and whose existence were unknown.

During the pendency of this action, Hugh Neece died. His wife, Florence Neece, was substituted as Administratrix of the estate of Lulu S. Middelton and as administrix of his estate. His children, Joyce Marie Neece and Barbara Neece were added as party defendants.

Plaintiff's complaint contained two counts. In the first

count he prayed that he and the other heirs of Susan A. Soper be declared the owners, and placed in possession, of the real property owned by Susan A. Soper at the time of her death. In the second count, plaintiff prayed that he and the other heirs of Susan A. Soper have a money judgment against the Executor of the Estate of Lulu S. Middelton, Deceased, in an amount equal to the value of certain real property owned by Susan A. Soper at the time of her death, which property had been sold by Lulu S. Middelton during her lifetime, and also prayed for a money judgment equal to the value of certain personal property similarly owned and sold.

·Defendants Clara Rogers and Virginia Allen filed disclaimers. Defendants John Morris, Will Morris, Dan Morris and Thomas R. Morris, and all unknown persons claiming by, through or under them, were duly served but failed to appear. Their defaults were entered. The remaining defendants filed an answer. The ownership of the real property by Susan A. Soper at the time of her death was admitted. Defendants denied that plaintiff had any interest in the property and alleged that title stood in defendants. Defendants further alleged that the issues, the same as here involved, had been decided in a former action in the same district court (Civil Action No. 80921), and that plaintiff's action was barred by certain designated statutes of limitation.

The matter was tried to the court sitting without the intervention of a jury, and judgment was entered in favor of defendants and against plaintiff. Findings of fact, conclusions of law and judgment and decree were entered. By this decree it was held that Lulu S. Middelton, at the time of her death, was the owner in fee simple of the property here involved and, further, that plaintiff was barred by reason of Civil Action No. 80921, an action for partition of property filed in 1922, which we find it unnecessary to consider.

Plaintiff brings the case here for review by writ of error. He contends, inter alia, that the trial court erred:

(1) In finding that, at the time of her death, Lulu S. Middelton was the owner in fee simple of the real and personal property which is the subject matter of this action; (2) In not finding that at the time of the death of Lulu S. Middelton, plaintiff was the owner in fee simple, together with the other heirs of Susan A. Soper, of the real and .personal property which is the subject matter of this action. These contentions are based on several propositions which are stated and argued in his brief. We need consider but one of them because all others are without legal force unless this first premise is established. The foundation of plaintiff's case is the assertion that the will of Susan A. Soper created a fee simple conditional estate in her two daughters, Katie S. Pence and Lulu S. Middelton.

Question to be Determined.

■ *Should the interest in lands, known in the old common law of England as an estate in fee simple conditional, be recognized in this jurisdiction?*

The question is answered in the negative. Since the existence of this particular type of estate is an essential prerequisite to the maintenance of plaintiff's case, the negative answer to the question disposes of the controversy. Because the subject involved is most technical and the question is one of first impression in this jurisdiction, we consider the historical background of the contentions of the parties in an effort to obtain a clear understanding of a subject not generally understood.

The language used in the will of Susan A. Soper, "To my daughters * * * and to the heirs of their body," is, as admitted by defendants, the language which at the common law in England prior to the enactment of the Statute De Donis in the year 1285, created a fee simple conditional. At a very early period attempts were made to convey in fee simple and at the same time restrict the inheritance to lineal heirs of the first donee. Thus A might convey Blackacre "to B and the heirs of his body." The donor doubtless intended, not only that the group of

possible heirs would be limited to issue of the donee, but also that the inheritance by heirs of the body would not be defeated by any act of the donee. In this latter proposition, however, he was doomed to disappointment. The courts held that, when the donee had issue born to him, he could alienate by inter vivos conveyance in fee simple absolute and thus defeat any inheritance by his issue or any reversion to the donor on failure of issue. This estate, created by a conveyance to B and the heirs of his body, was called a fee simple conditional, since it was in fact a fee simple conditioned on issue being born to the donee. Restatement of the Law, Property, section 59, and Introductory Note to Ch. 5.

The words, "to my daughters * * * and to the heirs of their body," which must be interpreted as meaning their respective bodies, would now create a fee simple conditional in three of our states, namely, Iowa, South Carolina and Oregon, in which the fee simple conditional is recognized. Restatement of the Law, Property, §59, comment b; Introductory Note to Ch. 5, Special Note 1. Nebraska once recognized this type of estate, but by virtue of Neb. Rev. Stat. (1943) §76-110, the fee simple conditional no longer is recognized in that state. It thus appearing that the language of the will was such as would create a fee simple conditional in jurisdictions where that type of estate is recognized, it becomes necessary to determine whether or not the fee simple conditional has been, or should be, recognized in Colorado. So far as we know, or the briefs indicate, no appellate court in this state has ever passed upon the question of the existence of the fee simple conditional as a part of the land law of Colorado. We are of the opinion that the fee simple conditional has not been, and should not be, recognized in this state. The following are some of the considerations which have led us to this conclusion.

Both an estate in fee simple conditional and an estate in fee tail are estates of potentially infinite duration inheritable only by the issue of the first taker. Re-

statement of the Law, Property, §17. Estates in fee simple conditional existed in England for some time prior to the enactment of the Statute De Donis in 1285. During its existence a transfer to "B and the heirs of his body," gave B an interest inheritable only by the issue of B. If, however, B had the required issue, he could convey to anyone in fee simple absolute. Restatement of the Law, Property, chapter 5, Introductory Note. If, however, B did not dispose of the land it descended upon his death to the prescribed issue *who in turn had an estate in fee simple conditional.* Restatement of the Law, Property, §76, Illustration II and Comment C.

█ The power to convey upon birth of issue was thought to be contrary to the intent of the person who had created the interest, and to correct this situation the Statute De Donis was enacted in 1285. By virtue thereof all limitations which theretofore would have created estates in fee simple conditional thereafter created estates tail, which were extremely important in English land law and society for at least five hundred years thereafter. The major difference between the fee simple conditional and the estate tail was that the former was freely alienable after birth of the required issue while the latter lacked this characteristic and its alienability was extremely limited. As time passed, however, the social disadvantages resulting from the restrictions were relaxed. Two hundred years after De Donis, a tenant in tail in possession could convey as effectively as a tenant in fee simple absolute, although the procedure was complicated and expensive. Restatement of the Law, Property, §78, Special Note. Gradually, however, methods became less and less cumbersome until today, in most jurisdictions where the fee tail exists, conveyances by deed will bar the entail, the reversioner and the remaindermen. It thus will be seen that, so far as alienability is concerned, there is little to choose today between the fee simple conditional and the fee tail, as a comparison of section 69, Restatement of the Law, Prop-

erty, with section 79 thereof will indicate. As a matter of fact, the advantage may be with the estate tail because birth of issue is not a prerequisite to alienability. Thus it would appear that if one type of estate is foreign to the policy of our institutions, the other is equally so, and that neither should become a part of the common law as adopted by our state.

██ Textbook writers have consistently listed Colorado as a state which *does not* recognize the fee simple conditional and which *does* recognize the fee tail but converts it into a life estate and remainder. Restatement of the Law, Property, Ch. 5, pages 201 to 211; 114 A.L.R. 607; King, Future Interests in Colorado 7, footnote 9; 2 Powell on Real Property §199.

When the Colorado General Assembly met in 1877 it enacted two statutes which, in the opinion of our Court, would be conclusive in favor of defendants without further argument or citation of authority other than the historical fact that the fee simple conditional was abolished in England in 1285, and that thereafter until the fourth year of James the First and far beyond, the fee tail was a highly important feature of English land law. The two Colorado statutes are the following:

Chapter 159, section 1, '35 C.S.A.: "The common law of England, so far as the same is applicable and of a general nature, and all acts and statutes of the British parliament, made in aid of or to supply the defects of the common law prior to the fourth year of James the First (excepting the second section of the sixth chapter of forty-third Elizabeth, the eighth chapter of thirteenth Elizabeth, and ninth chapter of thirty-seventh Henry Eighth), and which are of a general nature, and not local to that kingdom, shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority."

Chapter 40, section 7, '35 C.S.A.: "In cases where, by the common law, any person may be or become seized in fee-tail of any lands, tenements of hereditaments, by

virtue of any devise of conveyance, or by any other means whatsoever, such person, instead of becoming seized in fee-tail thereof, shall be deemed and adjudged to be seized of such lands, tenements and hereditaments, for his or her natural life only; and the remainder shall pass in fee simple absolute to the person or persons to whom the estate would first pass on the death of such first grantee, devisee, or donee, in tail, according to the course of the common law, by virtue of such devise or conveyance."

Illinois has a statute almost identical to the last quoted section 7. It was first enacted in 1827 and today appears as section 3 of chapter 30, Smith-Hurd Illinois Annotated Statutes (Permanent Edition). Of their statute the Supreme Court of Illnois, in *Moore v. Reddel*, 259 Ill. 36, 102 N.E. 257, has said, inter alia: "The statute concerning conveyances was enacted January 31, 1827, and as revised appeared as chapter 24 of the Revised Statutes of 1845, and section 6 was repeated in the same language in chapter 30 of the Revised Statutes of 1871-72. The manifest intention of the General Assembly was to get rid of estates tail *and not to revive conditional fees * * ** and to substitute for the fee tail a life estate in the grantee, with remainder in fee simple to those who would take such remainder by the terms of the grant." (Emphasis supplied.) See, also, *Frazer v. Supervisors of Peoria Co.*, 74 Ill. 282 (1874).

It is almost inconceivable that Susan A. Soper, when she made her will in the year 1911, intended to create an estate of a type which was abolished by the Statute De Donis more than six hundred years ago, had never been mentioned in any Colorado statute or reported case, had uniformly been regarded as nonexistent in Colorado, and which had characteristics alien to the inherent spirit of our institutions and the knowledge of the members of our Bar.

Only one contention of plaintiff remains to be considered. This is the point, raised by counsel in their

reply brief, that Mrs. Soper did not die intestate; that she devised all interest in the property which was subject to devise; and that therefore she necessarily died testate. They say that, even if the will of Mrs. Soper created a life estate in her two daughters with contingent remainders to the issue of their bodies, still this does not mean that she died intestate; that the two daughters of Mrs. Soper could not be the heirs to whom her intestate property (the reversionary interest) descended, if any there was, because, during the lives of the two daughters, there was a possibility that either or both might have issue and that there was no intestate property until both daughters died without issue, at which time the daughters were not alive to inherit. They also say that there was no merger of estates in Lulu S. Middelton. The substance of plaintiff's point can be summed up as follows: If A devises Blackacre to B her sole heir for life, with remainder to B's children and (1) B makes a will devising her entire estate to C and (2) B dies without ever having had a child, B's devisee C will not take Blackacre because B never had a reversionary interest which he could devise i.e. there was a possibility of issue as long as B lived and therefore no reversionary interest which B could devise.

We cannot agree with this theory. It is our opinion that when Susan A. Soper died her will created life estates in her two daughters, with contingent remainders to their respective bodily heirs. The reversion, being the residue of the estate left in the heirs of the testator, was then vested in the two daughters as tenants in common, and was transferable or subject to intestate succession in all respects as other vested interests in property.

When Katie S. Pence died without ever having had issue, her reversionary interest, which by her death had become a fee simple asolute in one-half the property, .vested in Lulu S. Middelton her sole heir at law. Thereafter until her death, Lulu S. Middelton had a fee simple

absolute in one-half the property and a reversion in fee simple absolute in the other half. When she in turn died without ever having had issue, her reversionary interest in her original one-half the estate became a fee simple absolute, which passed, together with the one-half she had derived from her sister, to the beneficiaries under her will.

While this opinion has been written in the language of real-property law, the conclusions of our Court apply with equal force to both the real and personal property, title to which was in dispute in the case under review.

The judgment of the trial court is affirmed.

MR. JUSTICE ALTER not participating.